## Thomas Stedman *vs.* Calvin C. Crane

If a dwelling-house be so constructed as to be capable of being used as a double house, or a distinct residence for two families, each family having an outer door, and if the house be thus used by the families of A. and B., then an officer who has an execution against B., and enters A.'s outer door, with A.'s consent, has no authority to break open the door of B.'s room, which adjoins a room of A., for the purpose o. arresting B. on the execution ; but if the door of B.'s room be of common use and passage for the families of A. and B., at the pleasure of both, either to go out of the house through A.'s outer door, or as a passage-way to the interior of the house, then such door is not privileged as an outer door, and the officer may lawfully enter it forcibly, for the purpose of arresting B.

Trespass for an assault and false imprisonment. Trial before *Dewey*, J. who made the following report thereof :

It appeared in evidence that the defendant had forcibly arrested the plaintiff, at his dwelling-house, and committed him to the jail in Lenox. The defendant justified under a writ of execution against the plaintiff, served by the defendant, as a deputy sheriff. The plaintiff insisted that the arrest was illegal, and was effected by forcibly entering his dwelling-house.

It was in evidence that the building in which the plaintiff lived was occupied by two families, viz. the plaintiff's, and that of his son in law Cone, under whom the plaintiff was tenant of certain rooms, by virtue of a verbal lease from Cone. The plaintiff was to occupy the kitchen, the hall and the close-press, and to have a privilege, in common with Cone, in the square room. To the part occupied by the plaintiff there was an outer door, being the front door of the house. . Said Cone occupied the residue of the house, and there was another outer door, being the back door, which he used for the entrance, from the yard or street, into his part of the house. The evidence tended to show that the defendant entered peaceably, and without breaking, into the part of the house occupied by Cone, through his outer door ; that being thus within Cone's part of the house, he requested to have the room shown to him which was occupied by the plaintiff ; that he entered the plaintiff's room by forcibly opening a door

leading into it from the room occupied by Cone, after due notice and request to be admitted.

There was evidence tending to show that the door, which the defendant forcibly opened, was occasionally used, by the plaintiff and his family, to pass into Cone's room, for various purposes; that the plaintiff, in several instances, had invited visitors, who were in Cone's room, to visit him, and conducted them to his room, through this door; and that such use was made of this door, both by the plaintiff and his wife. It also appeared that on the evening of the arrest, and previously thereto, certain visitors, who were in Cone's room, passed into the plaintiff's room, opening the said door for that purpose.

On this evidence the defendant contended that this was an inner door. And the court instructed the jury, that " if the house was so constructed as to be capable of being used as a double house, or a distinct residence for two separate families, each family having an outer door, and if the same was in fact actually thus used, then an entry into Cone's room, through his outer door, though peaceably and with the assent of Cone, would not authorize the breaking open of a door, connecting the rooms of the two different tenants, but kept closed as to actual use and occupation by the parties; and that if such was the state of things, the defendant was a trespasser in entering the room of the plaintiff. But if the door through which the defendant entered the plaintiff's room was a door of common use and passage by the two families passing from time to time, at the pleasure of the different residents, either to go out of the house through the outer door, called Cone's, or as a passage-way to the interior part of the house, then the door was not such a one as would be privileged as an outer door, and the officer, being peaceably in the room of Cone, adjacent to the plaintiff's room, after due notice of the purpose of his entry, and refusal to admit him, would be justified in opening the plaintiff's room, and making the arrest."

Upon all the evidence in the case, under these instructions, the jury found a verdict for the defendant. New trial

to be ordered, if these instructions were not sufficiently favorable to the plaintiff.

*Branning*, for the plaintiff, cited Yelv. (Amer. ed.) 29, and argued that the plaintiff's use of the inner door, by permission of Cone, gave the defendant no authority to break it open.

*Sumner*, for the defendant, was stopped by the court.

SHAW, C. J.   The court are of opinion that the instructions, in regard to what constituted the outer door, were correct, and well adapted to the facts and circumstances of the case.   See Hammond's Nisi Prius, 149 – 152.   *Whalley* v. *Williamson*, 7 Car. & P. 294.

*Judgment on the verdict.*